UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EDUARDO BUENO,

     Petitioner,

                                   CIVIL NO. 2:16cv680
v.                        [ORIGINAL CRIMINAL NO. 2:16cr8]

UNITED STATES OF AMERICA,

     Respondent.

## OPINION AND FINAL ORDER

This matter comes before the court on the Petitioner's pro
se "Motion to Vacate, Set Aside, or Correct Sentence"
("Motion"), filed on November 14, 2016, and accompanying
Memorandum in Support ("Memorandum"). ECF Nos. 44, 45.[1] Also
before the court is the Petitioner's Motion for Transcripts, ECF
No. 46, and Motion to Expand the Record. ECF No. 47. For the
reasons set forth below, the court **DENIES** the Petitioner's
motions.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In October 2015, Google became aware that child pornography
was being saved to a Google user's storage account. Statement of
Facts ¶ 1. Google informed the National Center for Missing and

---

[1] The court accepts the Motion as effectively filed on the
date the Petitioner certifies he placed it in the prison's
internal mailing system. See Houston v. Lack, 487 U.S. 266
(1988) (articulating the prison mailbox rule).

Exploited Children ("NCMEC"), which tied the information to a previous report of child exploitation linked to the same e-mail account. Id. Google determined that the user of the account provided additional information when he registered for the account, including that his name was Eduardo Bueno. Id. Many e-mails sent to the account addressed the recipient as "Eduardo." Id. ¶ 8.

The Petitioner is a registered sex offender, who resided in Portsmouth, Virginia. Id. ¶ 2. In 2001, he was convicted of indecent assault and battery on a child under the age of fourteen, in violation of Chapter 265, Section 13B, of the laws of Massachusetts. Id. ¶ 2. Bail court documents allege that the Petitioner repeatedly raped his then-girlfriend's daughter over a two-year period, when the daughter was between six and eight years old. PSR ¶ 37.

According to NCMEC report #6813709, the e-mail account user uploaded three files of images of minors engaging in sexually explicit conduct between November 14, 2014, and January 11, 2015. Statement of Facts ¶ 3. According to NCMEC report #6752734, the user uploaded to an e-mail an image of minors engaging in sexually explicit conduct on October 6, 2015. Id. ¶ 4. The account was accessed by Cox IP address 24.254.198.95. Id. On November 6, 2015, Cox responded to a subpoena related to the subscriber of that IP address. Id. ¶ 5. Cox reported that

the account was associated with a rental unit where the Petitioner resided, and had been activated on September 17, 2015. Id.

On November 19, 2015, Homeland Security Investigations ("HSI") applied for and received a search warrant from the United States District Court for the Eastern District of Virginia for the contents of the e-mail account. Id. ¶ 6. The search warrant was issued to Google that same day. Id. On December 3, 2015, HSI received the contents of the e-mail account and discovered numerous additional e-mail accounts from which the account received and distributed child pornography. Id. ¶ 7. Most images were sent and received via e-mail attachments during 2014 and early 2015. Id. The user later provided images and videos containing child pornography via Google+ communities. Id. The account also contained e-mails discussing trading child pornography. Id. In one e-mail, the Petitioner boasted to the recipient that he had abused a child who attended his daughter's birthday party. PSR ¶ 8. In other e-mails, he implies that he abused another girl he describes as "the niece," and describes sexually abusing "little girls in the pool." Id.

On January 5, 2016, HSI and other law enforcement executed a search warrant at the Petitioner's residence and an arrest

3

warrant for the Petitioner.[2] Statement of Facts ¶ 9. The Petitioner was administered his <u>Miranda</u> rights, and then spoke with HSI. <u>Id.</u> He admitted to trading images of minors engaging in sexually explicit conduct, and stated that he used his cellular phone to do so. <u>Id.</u> HSI then seized the Petitioner's phone. <u>Id.</u>

Analysis of the Petitioner's phone confirmed that he used it to trade and store child pornography. <u>Id.</u> ¶ 10. The investigation revealed that on or about October 1, 2015, the Petitioner distributed visual depictions of child pornography, including the following files: Video_[JANE DOE]_4_.avi, Spongebob%20Tied.wmv, and dghjg.mp4. <u>Id.</u> ¶ 11. The Petitioner knew that the visual depictions and images contained in his e-mail account and on his cellular phone were images depicting actual minors engaged in sexually explicit conduct. <u>Id.</u> ¶ 13.

An eight-count indictment was returned on January 20, 2016. ECF No. 14. The indictment charged the Petitioner with seven counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2), and 2256(1) and (2), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B), and 2256(1) and 2. <u>See id.</u> No motions to suppress were filed, and on February 12, 2016, the Petitioner

---

[2] The Petitioner was detained in federal custody that day, and remained in custody until sentencing. <u>Id.</u> at 1.

appeared before Magistrate Judge Douglas E. Miller for a Rule 11 hearing. ECF No. 22. The Plea Agreement and Statement of Facts were filed with the court that same day. ECF Nos. 22, 23.

On May 31, 2016, the Petitioner appeared before this court for sentencing. In his Position Paper filed prior to sentencing, the Petitioner lodged a single objection to the PSR. ECF No. 31. He objected to the allegation, in paragraph fifteen of the PSR, that he had sexually abused his daughter. Id. As recognized by the court and the parties, any ruling on this objection did not affect the Petitioner's Guidelines calculation for sentencing, and the allegation was not considered for purposes of sentencing. The court imposed a forty-year term of incarceration, and a lifetime term of supervised release. ECF Nos. 34, 37. The court entered a Restitution Order in the amount of $1,000 and a Consent Order of Forfeiture. ECF No. 37. The court did not impose a fine. Id. The Petitioner did not file an appeal.

On October 14, 2016, the Petitioner filed a Motion requesting leave to file a forty-five page memorandum in support of his § 2255 motion. ECF No. 40. On October 21, 2016, the court issued an Order Striking Pleadings for failure to serve the United States Attorney. ECF No. 41. The Petitioner corrected the defect, ECF No. 42, and the court granted the Motion on November 7, 2016. ECF No. 43. On November 14, 2016, the

Petitioner filed pro se a "Motion to Vacate, Set Aside, or Correct Sentence," ECF No. 44, an accompanying Memorandum in Support, ECF No. 45, a Motion for Transcripts, ECF No. 46, and a Motion to Expand the Record, ECF No. 47. For the reasons set forth below, the court **DENIES** the Petitioner's motions.

## II. LEGAL STANDARDS FOR § 2255 MOTION

The Petitioner's § 2255 Motion alleges several trial errors for which no contemporaneous objection was made, and no direct appeal was filed. Accordingly, he must show "cause excusing his procedural default" and "actual prejudice resulting from the errors." United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotations omitted); see also United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994) (holding that the Frady "cause and prejudice standard" applies on collateral challenges to unappealed guilty pleas). In the absence of cause and prejudice, a challenger must demonstrate "that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). The cause for a procedural default "must turn on something external to the defense," and an attempt to demonstrate a miscarriage of justice "must show actual innocence by clear and convincing evidence." Id. However, a claim asserting ineffective assistance of counsel is properly raised in a § 2255 motion and need not clear the procedural

6

default bar. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.") (internal quotations omitted).

To claim ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, that (1) the attorney's performance was seriously deficient; and (2) such deficient performance prejudiced the petitioner by undermining the reliability of the judgment against him. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To show deficient performance, counsel's actions or omissions must be measured against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996); see also Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). The court must attempt to "eliminate the distorting effects of hindsight," and instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional

7

errors, the result of the proceeding would have been different." Id. at 694. In doing so, he "must show that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). A failure to carry the burden of proof as to one prong precludes relief and relieves the court of the duty to consider the other. Strickland, 466 U.S. at 700. Because, in this case, the Petitioner was sentenced following his guilty plea, he must also demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1989).

To evaluate the likelihood that a defendant would actually have gone to trial, the court must assess "the likelihood of success of a particular investigation or strategy." Reid v. True, 349 F.3d 788, 798 (4th Cir. 2003). A challenger "must convince the court that such a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). The "challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

### III. ANALYSIS OF § 2255 MOTION

#### GROUND ONE

The Petitioner contends that he was denied effective assistance of counsel.[3] He cites fifteen errors made by his attorney. For the reasons set forth below, Ground One of the Petitioner's Motion is denied.

#### Error One

The Petitioner alleges that his counsel rendered ineffective assistance because she initially told him that he "would have to plead guilty" to possession of child pornography, but later produced a Plea Agreement under which he would enter a guilty plea to distribution of child pornography and told him that possession was equivalent to distribution. Mem. at 2. According to the Petitioner, he suffered prejudice when he received a five-level enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2G2.2(b)(3)(B) for use of a computer or interactive computer service relating to the child pornography. Mem. at 2.

---

[3] The Petitioner's Motion states that his first ground for relief is ineffective assistance of counsel, and merely directs the reader to his accompanying Memorandum in Support. While the Memorandum does not explicitly identify the first ground for relief, the Petitioner describes fifteen "errors" made by his attorney, and then identifies "grounds" two through fourteen for relief. The court interprets these fifteen errors as subparts to his ineffective assistance of counsel claim.

To show deficient performance, counsel's actions must have been professionally unreasonable. Savino, 82 F.3d at 599. A defense attorney cannot merely conjure the plea agreement to which she believes her client is entitled; she can only offer what the government offers. Counsel who initially suggests the possibility of a favorable plea bargain, but can later only extract a less favorable agreement from the government, has not acted unreasonably. Moreover, to the extent that counsel suggested that the Petitioner's mere receipt of his child pornography would suffice to establish a violation of 18 U.S.C. § 2252(a)(2), she was not in error. The statute applies to any person who "knowingly receives, or distributes" child pornography via interstate commerce. 18 U.S.C. § 2252(a)(2). The Petitioner's possession of child pornography via his Google account is, without more, a valid basis for conviction under the statute. See United States v. Schnittker, 807 F.3d 77, 81 (4th Cir. 2015) (describing 18 U.S.C. § 2252(a)(2) as criminalizing "receipt of child pornography"). Accordingly, the Petitioner has not shown deficient performance.

To show prejudice, a challenger must show that absent counsel's errors, the results of the proceeding would have been different. The distribution enhancement is proper even where the Petitioner had only been convicted of receipt of child pornography. See United States v. Benkahla, 530 F.3d 300, 312

(4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict."). Furthermore, the Petitioner's guilty plea could not have been predicated on the absence of this enhancement, because the PSR was prepared months after entry of his plea. Importantly, the Petitioner did not receive a sentence greater than the maximum of which he was advised during the Rule 11 hearing. Accordingly, he has not shown prejudice.

### Error Two

The Petitioner alleges that he suffered constructive denial of counsel because his attorney "deliberately failed" to investigate and test the evidence against him, or to negotiate with the United States. Mem. at 3. The Petitioner supports this claim by arguing that the Plea Agreement did not recommend a term of incarceration more lenient than provided under the statute. Id. He argues that "no sane man pleads guilty to in turn receive the maximum penalty," and that in the absence of this error, he would have rejected the bargain and proceeded to trial.[4] Id. As discussed herein, the Petitioner knowingly and

---

[4] Throughout his Memorandum, the Petitioner argues that but for one error or another, he would have gone to trial. Finding no reason to tackle the issue at length each time the Petitioner

11

voluntarily did plead guilty, after being advised that he could receive the maximum statutory penalty of forty (40) years.[5]

Constructive denial of counsel occurs "when a lawyer entirely fails to subject the prosecution's case to meaningful adversarial testing" such that they might as well be absent from the proceedings. Glover v. Miro, 262 F.3d 268, 275 (4th Cir. 2001) (quoting United States v. Cronic, 466 U.S. 648, 659 (1984)). The record undermines the Petitioner's assertion that his counsel "did absolutely nothing." See Mem. at 3. The Plea Agreement resulted in the dismissal of seven counts, each of which carried a decades-long term of incarceration. The Petitioner benefitted from a three-level reduction in his Total Offense Level for acceptance of responsibility. PSR ¶¶ 33, 34. His guilty plea spared him and his family the indignity of having the lurid details of his egregious sexual misconduct aired at trial. His counsel advocated for reduced term of incarceration, and at sentencing requested that the court not

_____

raises it, the court addresses it here, but the reasoning applies elsewhere.

[5] In point-of-fact, this court rarely, if ever, accepts plea agreements under Rule 11(c)(1)(C), where the parties agree to a set sentence in advance, as the court endeavors to retain its discretion to sentence a defendant to a "sufficient but not greater than necessary" one under 18 U.S.C. § 3553(a), with the cap being the statutory maximum. Such was the case here. Finally, the court notes that the Petitioner's Guidelines range of 360 months to Life was restricted to 360 to 480 months, due to the statutory maximum of forty years.

impose specific terms of supervision relating to technology at that time. ECF No. 31. The record demonstrates that the Petitioner benefitted from the assistance of his counsel throughout the proceedings. Additional inquiry into the government's evidence would have been fruitless, given the unambiguous results of the thorough investigation, the Petitioner's confession, and the utter lack of any cogent exculpatory evidence or mitigating factors.[6] Therefore, he has not shown ineffective assistance or constructive denial.

Moreover, the Petitioner's decision to sign the Plea Agreement, and express satisfaction and understanding with its terms at the Rule 11 hearing, are inconsistent with his position now. He cannot simply decide, months after the fact, that he now regrets the bargain that he struck or that he previously held undisclosed reservations which render his plea or sentence unconstitutional. See Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000) ("Absent clear and convincing evidence to the contrary, [a party] is bound by the representations he made during the plea colloquy."). The fact that the Petitioner ultimately received the maximum term of incarceration authorized by statute on the charge to which he pled guilty demonstrates

---

[6] The Petitioner also argues that counsel should have investigated his "alternative perpetrator defense." Mem. at 11. For the reasons described elsewhere, counsel properly declined to pursue this theory further. See infra Error Six.

the gravity of his conduct, not the ineffectiveness of his counsel. There is no question that he understood the terms and consequences of his plea. See Mem. at 17 (stating that "the Movant was admonished of the consequential nature of the plea (i.e., 15-40 yrs)").

The Petitioner had no right to enter into any particular plea bargain, let alone a more favorable one than he received. Weatherford v. Bursey, 429 U.S. 545, 561 (1977). Even if he had entered into a different plea agreement with the United States, he would not have been entitled to court approval of the agreement. See Fed. R. Crim. P. 11(c)(3).[7]

To demonstrate that he would have rejected the Plea Agreement and gone to trial, the Petitioner must show that "proceeding to trial would have been objectively reasonable in light of all of the facts." Fugit, 703 F.3d at 260. This he has not done. He has merely asserted, without any explanation, that had a particular "error" not occurred, he would have proceeded to trial. Doing so would not have been reasonable, given the quantity and quality of the evidence against him, the lack of any rational defense, and the fact that a guilty verdict on multiple counts would almost certainly have resulted in the Petitioner's incarceration for the rest of his natural life, while the Plea Agreement affords him some chance of being

---

[7] See supra note 5.

released from prison. See Christian v. Ballard, 792 F.3d 427, 453 (4th Cir. 2015) (affirming state court's denial of ineffective assistance claim based on "overwhelming" evidence of guilt and potential lengthy term of incarceration avoided).

### Error Three

The Petitioner alleges that his counsel was ineffective because she did seek to strike the Plea Agreement's language affirming that counsel rendered effective assistance. Mem. at 5. The essence of the Petitioner's argument appears to be that his counsel acted in her own interests, not his, and that this language was an intrusion into his attorney-client relationship and created a conflict of interest. Id.

This clause is standard in plea agreements, and it is intended to ensure that the defendant does not enter into a plea agreement, if he is unsatisfied with his counsel's performance. See, e.g., Laposay v. United States, Nos. 1:12-cr-146, 1:15-cv-275, 2016 WL 2946175, at *5 (E.D. Va. May 19, 2016) (O'Grady, J.). It serves much the same function as the Rule 11 hearing. Id. The presence of this agreed-upon term does not demonstrate counsel's deficient performance. Nor does it intrude into his attorney-client relationship or violate the Sixth Amendment. A defendant is given, as was the Petitioner here, an opportunity on the record, under oath, to agree or not with this term of the Plea Agreement.

Moreover, this language does not "protect[] counsel against any future ineffective assistance claim," as the Petitioner asserts. Mem. at 5. A lawyer who renders ineffective assistance is accountable in a habeas corpus proceeding and, therefore, cannot be protected from such a claim. The presence of the aforesaid language in the Plea Agreement did not create an actual or potential conflict of interest between the Petitioner and his counsel.

### Error Four

The Petitioner alleges that his counsel rendered ineffective assistance because she failed to fully explain the scope of the Plea Agreement's waiver. Mem. at 7. The Petitioner asserts that he asked his counsel to explain the FOIA waiver to him, and his counsel provided an inadequate explanation. Id. He claims that but for this error, he would not have entered a guilty plea and would instead have proceeded to trial. Id.

He has not here alleged, much less demonstrated, the existence of any government misconduct or exculpatory evidence that might be uncovered. Further, he has not shown that in the absence of any indication that he would ever, under any circumstance, be able to use FOIA to his advantage, it would have been reasonable for him to reject the Plea Agreement and proceed to trial on the eight counts he faced. Fugit, 703 F.3d at 260. A FOIA waiver has little, if any, bearing on the

16

Petitioner's guilt and acceptance of the guilty plea. Prejudice here is far-fetched.

Moreover, the Petitioner does not allege that counsel answered his question incorrectly or that he attempted to ask counsel to further explain her comments. He merely implies that he has now realized that he could have used FOIA to uncover still-unknown evidence of misconduct. Counsel has not rendered ineffective assistance simply because the Petitioner failed to identify this new theory sooner. Cause for this failure is likewise far-fetched.

### Error Five

The Petitioner alleges that his counsel performed deficiently when she failed to file a motion to exclude the Petitioner's statements to law enforcement. Mem. at 9. According to the Petitioner, in January 2016, he was "bombarded by two FBI agents," and then "immediately requested an attorney." Id. At that point, a "State Trooper . . . criminally coerc[ed]" him by threatening to bring charges if the Petitioner failed to "cooperate with them." Id.

To support a finding of deficient performance of counsel, an unfiled suppression motion must have been meritorious and likely to have been granted, and there must be a reasonable probability that the motion would have affected the matter's outcome. Grueninger v. Director, Va. Dep't of Corrs., 813 F.3d

517, 525 (4th Cir. 2016). The record describes only one interaction with law enforcement in January 2016.[8] Statement of Facts ¶ 9.[9] On January 5, 2016, law enforcement executed a search warrant at the Petitioner's residence and an arrest warrant for the Petitioner, and "[a]fter being administered his Miranda rights, [the Petitioner] spoke with HSI," and admitted to trading child pornography. Id. The record does not show that the Petitioner invoked his right to counsel or made any request for representation.[10] See Statement of Facts ¶ 9. Therefore, the motion would have lacked merit and would not have been granted. Even had the motion been granted, and his statements had occurred, the volume of inculpatory evidence would have prevented it from changing the outcome of this case.

---

[8] The court believes that this is the January 2016 meeting described in the Memorandum. The court gives pro se pleadings a liberal construction. See, e.g., Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). If it is not, the Petitioner has not demonstrated that the interrogation was relevant to his prosecution.

[9] The Statement of Facts is signed, under oath, and admitted to record during the Rule 11 hearing.

[10] A suspect who is subject to a custodial interrogation "must unambiguously request counsel." See Davis v. United States, 512 U.S. 452, 459 (1994). This is an objective inquiry; questioning need not cease if a suspect makes an ambiguous or equivocal reference to an attorney. Id.

**Error Six**

The Petitioner alleges that his counsel suffered from a conflict of interest because her "interest in a plea of guilty and her private pecuniary interests conflicted with [his] penal interest." Mem. at 11. He states that his lawyer "duped [him] into a plea, so that she received every penny of the monies given to her for" subpoenas and motions. Id. at 13.

A conflict of interest may exist where there is an actual conflict between "an attorney's private interests and those of the client." United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992). A Sixth Amendment violation only occurs, however, when the conflict adversely affects counsel's performance. Id. To show that the conflict adversely affected counsel's performance, a challenger "must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued," "must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney," and "must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001).

The Petitioner assumes, without any basis in fact, that his counsel, a federal public defender, received some amount of money to use for his defense, but chose to keep it for herself

19

rather than spend it to investigate his case. He has not made such a showing. The Petitioner's counsel did not, and could not, benefit financially in the manner he has described. Accordingly, he has not demonstrated that a conflict existed.

The Petitioner alleges that his counsel's conflict caused her to inadequately investigate his so-called "alternative perpetrator defense." Mem. at 11. This theory posits that, the Wi-Fi at the Petitioner's house, as well as his cellular phone and e-mail accounts, were all accessible to third parties, and therefore he did not possess them, or, on some other grounds, there is reasonable doubt as to his guilt. Id.

The record suggests that counsel did not pursue this theory because it was implausible, not because of any conflict. The e-mail account used to trade child pornography in various forms for an extended period of time was registered under the Petitioner's name. Statement of Facts ¶¶ 1, 7. The account was used to distribute pictures of the Petitioner's own daughter, who was described in the e-mails as the sender's daughter. PSR ¶ 8. The e-mail account was accessed via an IP address registered to the Petitioner's residence. Statement of Facts at ¶¶ 4, 5. Correspondence sent to the e-mail address was often addressed to the Petitioner by name. Id. ¶ 8. When confronted by law enforcement, the Petitioner admitted to using his phone to

trade images of minors engaging in sexually explicit conduct, which was confirmed by forensic analysis. Id. ¶¶ 9, 10.

Accordingly, it was reasonable for the Petitioner's counsel to conclude that the alternative perpetrator defense was meritless, and that further investigation was more likely to uncover additional inculpatory evidence than any exculpatory evidence at all. Pursuit of the alternative perpetrator defense may have made the Petitioner ineligible for acceptance of responsibility credit, making it perhaps the worst possible option for counsel to pursue. The alternative perpetrator defense was neither viable nor grounded in reality.

### Error Seven

The Petitioner alleges that his counsel rendered deficient performance when she failed to subpoena various e-mail and phone records. Mem. at 14. The Petitioner states that he was entitled to subpoena this information, which would have supported his alternative perpetrator defense. Id. at 15.

The court has considered the Petitioner's theory. It is unconvincing. Petitioner's counsel reasonably decided not to pursue it.

### Error Eight

The Petitioner alleges that counsel assured him that he would receive a twenty-year sentence, and that because he received a forty-year sentence, his plea was "not knowing,

21

intelligent, or voluntary." Id. at 17. A waiver of constitutional rights by a plea bargain, such as the right to a jury trial, "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970).

A guilty plea is intelligent if the Petitioner was advised by competent counsel, made aware of the charge against him, and there was nothing to indicate that he was incompetent. Appleby v. Warden, N. Reg'l Jail & Corr. Facility, 595 F.3d 532, 537 (4th Cir. 2010). The plea is knowing and voluntary if done with "sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. at 749. Further, no Strickland prejudice exists where an attorney makes an inaccurate prediction of sentence, if at the Rule 11 hearing the court informed Petitioner of the potential sentence he faced. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995).

The Rule 11 hearing would have cured any error made by counsel's inaccurate prediction. See id. The Plea Agreement identified the maximum sentence authorized by statute and the court's authority to impose the same. Plea Agreement ¶ 1.[11]

The Petitioner has not alleged that he was unaware of the charges against him or that he was incompetent, and the terms of

---

[11] See supra note 5 and accompanying text.

the signed Plea Agreement and the Rule 11 hearing further
confirm that the Petitioner was informed of the charges and
potential sentences he faced. Burket, 208 F.3d at 191 ("Absent
clear and convincing evidence to the contrary, [a party] is
bound by the representations he made during the plea
colloquy."). That the Petitioner ultimately received a greater
sentence than he may have anticipated in May 2016 does not mean
that his guilty plea from February 2016 was involuntary. The
Petitioner concedes that counsel warned him, prior to entry of
his plea, that a guilty plea meant he could face a forty-year
term. Mem. at 17 ("[T]he Movant was admonished of the
consequential nature of the plea (i.e., 15-40 years)."). This
persuades the court that his contention that absent this
purported error he would have proceeded to trial is untrue, and
that it would not have been reasonable for him to do so, even if
it were true.

**Error Nine**

The Petitioner alleges that his counsel failed to "subpoena
Family Dollar receipt and video records," which, according to
the Petitioner, would have identified the true owner of the
child pornography. Mem. at 19. According to the Petitioner, the
government's case "was premised on the purported phone accessing
the purported email." Id. The Petitioner alleges that this error

23

prejudiced him by foreclosing the opportunity to investigate the alternative perpetrator defense. Id. at 20.

The court has considered the Petitioner's alternative perpetrator defense, and determined that counsel's decision not to pursue an investigation was reasonable.[12]

### Error Ten

The Petitioner alleges that his counsel rendered ineffective assistance when she failed to object to the application of the sentencing enhancement under U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse of a minor. Id. at 21. He argues that the Massachusetts state laws under which he was previously convicted "sweep more broadly" than the relevant federal sexual abuse statutes, and therefore application of the enhancement was in error. Id. Elsewhere in his Memorandum, the Petitioner attacks the application of the enhancement directly. Since the court has determined that application of the enhancement was not improper,[13] counsel did not err, and was not ineffective, by failing to object to it.

---

[12] See supra Error Six and Error Seven.

[13] See infra Ground Three.

### Error Eleven

The Petitioner alleges that his counsel rendered deficient performance, when she failed to further investigate his theory that another individual owned the Wi-Fi in question, and a total of five other people had access to the Petitioner's cellular phone. Id. at 22. He claims that he suffered prejudice because the witnesses would have "disprove[d] the government's constructive possession of the purported phone." Id. This is yet another restatement of his alternative perpetrator defense. For the reasons that the court has previously stated, counsel's failure to pursue the alternative perpetrator defense did not cause her to render ineffective assistance of counsel.[14]

### Error Twelve

The Petitioner alleges that his counsel rendered deficient performance when she advised him that he "would receive life in prison if he went to trial," because the counts in the indictment "irrefutably prove" that he could not have actually received a life term. Mem. at 24. As a result, the Petitioner argues that his plea was "unknowing due to counsel's erroneous advice." Id. He claims that he suffered prejudice when he received a term of incarceration of forty (40) years. Id.

The Petitioner was charged in an eight-count criminal indictment. Seven of the charges carried a maximum period of

---

[14] See supra Error Six, Error Seven, and Error Nine.

incarceration of forty (40) years, and the eighth charge carried a maximum term of twenty (20) years. Had the Petitioner been convicted of all counts at trial, he likely would have been incarcerated for the remainder of his natural life. See U.S.S.G. § 5G1.2(d) (imposition of consecutive sentences when defendant convicted of multiple counts); cf. United States v. White, 238 F.3d 537, 543 (4th Cir. 2001) (although decided under mandatory Guidelines regime, case recognizes consecutive terms of imprisonment for multiple counts of conviction when Guidelines range exceeds the highest statutory maximum).[15] Accordingly, counsel's advice was not deficient. For the same reasons, the Petitioner's claim that he would have otherwise proceeded to trial is unreasonable. Padilla, 559 U.S. at 372; Fugit, 703 F.3d at 260.

### Error Thirteen

The Petitioner claims that his counsel rendered ineffective assistance when she failed to object, prior to sentencing, to paragraph fifteen of the PSR, which contained his daughter's allegation that he sexually abused her. Mem. at 25. He further claims that even though the court stated that it would not consider the allegation for sentencing purposes, it was not removed from the PSR. Id.

---

[15] The Petitioner's Guidelines range for the one count of conviction was 360 months to Life, which exceeded the statutory maximum of forty (40) years for that count. See supra note 5.

On May 4, 2016, the Petitioner's counsel filed a Position Paper on sentencing that contained the precise objection that he now claims was not raised. ECF No. 31. Because the record clearly demonstrates that the error the Petitioner complains of did not occur, as his counsel specifically raised the objection, the Petitioner has not demonstrated that his counsel rendered deficient performance. Moreover, all parties and the court recognized that the allegation did not affect the Guidelines calculation, which in point-of-fact exceeded the statutory maximum sentence of forty (40) years,[16] and the court did not consider the allegation in sentencing the Petitioner. As such, there was no need to rule on the objection or to remove the allegation from the PSR. See Fed. R. Crim. P. 32(i)(3)(B) (upon receipt of a defendant's objections, the court shall "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affecting sentencing, or because the court will not consider the matter in sentencing").

### Error Fourteen

The Petitioner alleges that his counsel rendered deficient performance because she suffered from a conflict of interest. Mem. at 26. As evidence of this purported conflict, he states that Errors One through Thirteen show "just how disloyal counsel

---

[16] See supra note 5.

27

was to secure her interests, both in a plea of guilty and in pecuniary gain," and that his counsel did "absolutely nothing." Id.

The Petitioner has not demonstrated that his counsel suffered from an actual conflict of interest or that any such conflict caused his counsel to alter her defense strategy.[17] The court has also found no deficiency in counsel's performance in the conduct described by the Petitioner's Errors One through Thirteen. Moreover, the Petitioner obtained substantial benefits from the Plea Agreement.[18]

### Error Fifteen

The Petitioner alleges that he was constructively denied counsel because Errors One through Fourteen show that he distrusted his counsel and unknowingly waived his constitutional rights on the advice of his counsel, who merely acted in her own self-interest. Mem. at 27.

The conduct the Petitioner complains of in Errors One through Fourteen was not in violation of his rights. No conflict of interest existed.[19] The record indicates that the Petitioner's

---

[17] See supra Error Two and Error Three.

[18] See infra Ground Thirteen.

[19] See supra Error Six.

guilty plea was constitutionally valid and that he was not denied assistance of counsel.[20]

## GROUND TWO

The Petitioner claims that his Sixth Amendment rights and attorney-client privilege were violated by the presence, in the Plea Agreement, of language affirming that his counsel provided effective representation. Mem. at 28. He did not previously present this issue to the court or raise it on appeal. For the reasons that this theory does not support relief on ineffective assistance of counsel grounds, and because he has not shown cause and prejudice for his default, Frady, 456 U.S. at 168, it also fails as a standalone claim.[21]

## GROUND THREE

The Petitioner claims that the enhancement under U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of activity involving sexual abuse of a minor was improper, because his two convictions under Massachusetts state law "sweep more broadly" than sexual abuse statutes under federal law and therefore cannot be considered for enhancement purposes. Mem. at 30. The Petitioner cites two recent Supreme Court cases in support of this argument.

---

[20] See supra Error Eight.

[21] See supra Error Three.

In Johnson v. United States, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. 135 S.Ct. 2551, 2563 (2015). In Mathis v. United States, the Supreme Court held that a conviction under a state burglary law that was broader than generic burglary also could not "give rise to an ACCA sentence." 136 S.Ct. 2243, 2257 (2016). Because the Petitioner was not sentenced under the ACCA, Johnson and Mathis are inapposite.

The Petitioner states that because the Massachusetts law he violated is broader than the analogous federal law, the enhancement is improper. Mem. at 30. In support, he cites United States v. Dahl, a case in which the Third Circuit held that a conviction under Delaware state law was insufficient to justify application of the "career sexual offender guideline, § 4B1.5." 833 F.3d 345, 349 (3d Cir. 2016). This authority is likewise inapplicable to the Petitioner, as the Petitioner's enhancement was under § 2G2.2(b)(5). Section 4B1.5 applies only where a defendant has previously sustained "at least one sex offense conviction." That enhancement requires a conviction under a state law that could have supported a federal conviction, so a state law that criminalizes conduct the federal law does not cannot support application of the enhancement.

By contrast, § 2G2.2(b)(5) applies where a defendant "engages in a pattern of activity involving the sexual abuse or

exploitation of a minor," U.S.S.G. § 2G2.2(b)(5), "whether or not the abuse or exploitation . . . resulted in a conviction for such conduct," U.S.S.G. § 2G2.2, comment (n.1). The Guidelines define "pattern of activity involving the sexual abuse or exploitation of a minor" as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant." U.S.S.G. § 2G2.2, comment. (n.1). "Sexual abuse or exploitation" is further defined to encompass the conduct described in, among other statutes, 18 U.S.C. § 2242. Id. The enhancement applies when the court finds that the appropriate facts have been demonstrated by a preponderance of the evidence. United States v. Kiulin, 360 F.3d 456, 460 (4th Cir. 2004).

The Petitioner repeatedly raped his then-girlfriend's daughter over a two-year period, when the daughter was between six and eight years old. PSR ¶ 37. This conduct falls within the conduct prescribed by 18 U.S.C. 2242(2), which prohibits sexual acts with another person, if such person is incapable of appraising the nature of the conduct or physically incapable of declining participation in, or unwillingness to engage in, that sexual act. A "sexual act" is "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years." 18 U.S.C. § 2246(2)(D). The text of the statute plainly applies to the multiple instances of

child rape committed by the Petitioner when he was twenty four years old. See United States v. Bryant-Royal, 607 F. App'x 258, 260-61 (4th Cir. 2015) (discussing twenty one year old defendant charged with violating 18 U.S.C. § 2242(2) for sex with a fifteen year old, though charge was dismissed following conviction under a different statute). More recent conduct by the Petitioner also supports application of this enhancement. The Petitioner touched his daughter's friend at his daughter's party, and has boasted that he has sexually touched "little girls in the pool." PSR ¶ 8. Furthermore, the Petitioner cannot overcome his procedural default on this issue. Frady, 456 U.S. at 168.

## GROUND FOUR

The Petitioner alleges that the Plea Agreement is ambiguous, and therefore unenforceable. Mem. at 31. This deficiency, according to the Petitioner, renders his guilty plea invalid, involuntary, and unknowing. Id. The purported ambiguity is in the Plea Agreement's language affirming that his counsel rendered effective assistance. Id. This argument remains without merit.[22]

Whether a written plea agreement is ambiguous "should ordinarily be decided by the courts as a matter of law." United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986). If the

---

[22] See supra Error Three.

agreement is unambiguous and there is no suggestion of overreaching, it should be enforced accordingly. United States v. Garcia, 956 F.2d 41, 44 (4th Cir. 1992). The Petitioner has failed to demonstrate that the language in question is imprecise or ambiguous. See Mem. at 31 (stating without explanation that the "term was non-performable due to imprecision and ambiguity"). Nor can this court conceive of any ambiguity; the language is not uncertain or susceptible to multiple meanings. It is simply an affirmation that his counsel represented him adequately throughout the adversarial process. The Petitioner's mere assertion of ambiguity is insufficient to actually demonstrate ambiguity. See United States v. McLaughlin, 813 F.3d 202, 204 (4th Cir. 2016) (parties' different interpretations insufficient to render agreement ambiguous). Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

## GROUND FIVE

The Petitioner complains that the court improperly enhanced his sentence by relying on uncontested information regarding previous convictions. Mem. at 33. The Petitioner asserts that his "fugitive charge and [two] sex offenses are non-violent," and that the "enhancement was improper." Id.

The Petitioner fails to state which enhancement he complains of. See id. None of the enhancements applied relate do

33

prior violent conduct. See PSR ¶¶ 22-27. The Petitioner fails to explain the significance of his assertion that his prior convictions were non-violent, and the court can conceive of none. It was not improper for the court to consider his prior conduct and acts of sexual violence at sentencing. Benkahla, 530 F.3d at 312. Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

## GROUND SIX

The Petitioner argues that the court's application of the enhancement under U.S.S.G. § 2G2.2(b)(7)(D) for involvement of 600 or more images was in violation of United States v. Booker, because the Statement of Facts attributes the Petitioner with distribution of only videos, not images. Mem. at 34.

At sentencing, a judge "may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as that Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict." Benkahla, 530 F.3d at 312. Judicial fact-finding is appropriate in determining the applicability of enhancements under the Guidelines. United States v. Battle, 499 F.3d 315, 322-323 (4th Cir. 2007). This does not violate the Sixth Amendment, or Booker, because the judge could disregard the Guidelines and apply the same sentence, as authorized by statute. Id.

The Petitioner was attributed with possession of 53,235 images in the PSR. PSR ¶ 7. That number is the sum of the 510 images of child pornography found, and the 52,725 image equivalents attributed to the Petitioner because he possessed 703 videos of child pornography.[23] Id. The calculation of image equivalents from the Petitioner's videos was not improper. See United States v. Garcia, 402 F. App'x 768, 769 (4th Cir. Nov. 19, 2010) (rejecting challenge to the seventy-five to one ratio). Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

### GROUND SEVEN

The Petitioner alleges that the court's application of U.S.S.G. § 2G2(b)(4) was in violation of Booker on the grounds that neither the Statement of Facts nor the Plea Agreement stated that the Petitioner possessed or distributed images containing bondage, bestiality, or sadomasochistic activity. Mem. at 36.

A court does not violate a defendant's Sixth Amendment rights when it considers facts relevant to determining an advisory Guidelines range and does not sentence the Defendant to a prison term greater than that authorized by a plea agreement.[24]

---

[23] Each video is the equivalent of 75 images. U.S.S.G. § 2G2.2, comment. (n.4).

[24] See supra Ground Six.

35

This enhancement, like the one described above, was not improper. Here, the PSR reported that four of the Petitioner's images and eighteen of the Petitioner's videos contained bondage, bestiality, or sadomasochistic activity. PSR at 6. Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

### GROUNDS EIGHT AND NINE

The Petitioner alleges that his counsel rendered ineffective assistance because she failed to raise the issue of the "illegality" of enhancements under U.S.S.G. § 2G2.2(b)(7)(D) (Ground Eight) and 2G2.2(b)(4) (Ground Nine). Mem. at 38-40. A challenger asserting ineffective assistance after a guilty plea must demonstrate deficient performance and prejudice, and that he would have otherwise gone to trial. Strickland, 466 U.S. at 687; Lockhart, 474 U.S. at 59.

The Petitioner has not demonstrated that any Booker violation occurred.[25] Accordingly, his counsel's failure to raise the issue of a potential Booker violation at sentencing was not deficient performance. The Petitioner has not demonstrated ineffective assistance of counsel. Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

---

[25] See supra Grounds Six and Seven.

## GROUNDS TEN AND ELEVEN

The Petitioner alleges that inclusion of the file name "Spongebob.wmv tied"[26] in the Statement of Facts "suggests sadism as if a child was in bondage or 'tied' up during sexual intercourse," though the government never actually described the contents of the file. Mem. at 41. Therefore, the government has "knowingly created a false impression of a material fact" and violated his due process rights. Id. The Petitioner argues that the court applied the enhancement under U.S.S.G. § 2G2.2(b)(4) based on a determination that the file depicted sadism. Id.

It is well-settled that "deliberate deception of a court . . . by the presentation of known false evidence cannot be reconciled with the rudimentary demands of justice." Campbell v. Reed, 594 F.2d 4, 7 (4th Cir. 1979). A violation of the Due Process Clause exists where the government allows for the creation of a false impression such that the jury's verdict might have been different had it not been misinformed. See id.; United States v. Sutton, 542 F.2d 1239, 1243 (4th Cir. 1976). However, the Petitioner offers no support for his assertion that the file name "suggest[s] sadism." See Mem. at 41. Although the PSR states that four images and eighteen videos possessed by the Petitioner contain bondage, bestiality, or sadomasochistic

---

[26] The Petitioner's Memorandum misstates the file name. It is "Spongebob%20Tied.wmv," not "Spongebob.wmv tied." Statement of Facts ¶ 11.

activity, it did not describe the contents of the Spongebob%20Tied.wmv" file. The PSR establishes grounds for application of the sadism enhancement that are independent of the file the Petitioner complains of.

The Petitioner further alleges that evidence related to the file was fabricated by the Government. Mem. at 42. He claims that the Statement of Facts described the file as containing "a child in bondage being sexed by an adult male or female." Id.

To prevail on such a claim, the Petitioner must produce evidence of some misconduct. See Miller v. Pate, 386 U.S. 1, 5 (1967) (due process violation occurred where the defendant demonstrated, without objection, that the shorts shown at trial to be stained with the victim's blood were actually covered in paint). A prisoner who brings a due process claim on the grounds that evidence used to convict him was false bears the burden of demonstrating the evidence's falsity. See Flippo v. McBride, 393 F. App'x 93, 97 (4th Cir. 2010) ("Under either of [the prisoner's] theories, his claim cannot succeed unless he demonstrates that [the witness's] testimony was false.")

Contrary to the Petitioner's assertion, the Statement of Facts does not describe the contents of the file at all. It merely states that the file contains visual depictions of "a minor engaging in sexually explicit conduct," and that the file bore the name "Spongebob%20Tied.wmv" at the time the Petitioner

38

distributed it. Statement of Facts ¶ 11. The file "dghjg.mp4" is the only one described in the Statement of Facts. Id. ¶ 12. Its description neither mentions nor implies sadism, and, thus, the Petitioner has produced no evidence of misconduct. See id. Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

### GROUND TWELVE

The Petitioner alleges that his counsel rendered ineffective assistance because she did not view the "ambiguous[ly] title[d]" file described above. Mem. at 43. If she had watched the video, he contends, the sadism enhancement would not have been applied. Id.

A challenger asserting ineffective assistance after a guilty plea must demonstrate deficient performance, and that he would have otherwise proceeded to trial. Strickland, 466 U.S. at 687; Lockhart, 474 U.S. at 59. Here, the Petitioner has not demonstrated prejudice. As described above, the sentencing enhancement the Petitioner complains of was not applied based on the name of the file, but on the PSR's description of the images and videos in the Petitioner's possession.[27]

The Petitioner has also not demonstrated deficient performance. A lawyer "has a duty to make reasonable investigations or to make a reasonable decision that makes

---

[27] See supra Ground Ten and Ground Eleven.

particular investigations unnecessary," and the "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Counsel need not "investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." Wiggins v. Smith, 539 U.S. 510, 533 (2003). Counsel's decision to sign the Statement of Facts without viewing each of the Petitioner's 703 videos of child pornography was reasonable, in light of the contents of the Petitioner's e-mail account, the government's description of the videos, and the Petitioner's confession to law enforcement. Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

### GROUND THIRTEEN

The Petitioner argues that his Plea Agreement was unconscionable because it "totally benefits [the government]" and resulted from "the unequal bargaining power at the time the contract was formed." Mem. at 44.

Although the "plea bargaining process necessarily exerts pressure on defendants to pled guilty," it is well-settled law that "the government may encourage a guilty plea by offering substantial benefits in return for the plea." United States v. Mezzanatto, 513 U.S. 196, 209-10 (1995). The Petitioner was

under no obligation accept the Plea Agreement. But he did so
with the benefit of counsel, after a Rule 11 hearing, and with
an understanding of the agreement's consequences. The Petitioner
never attempted to withdraw his guilty plea. The United States
did not employ unconscionable bargaining tactics in negotiating
the Plea Agreement, nor did the agreement contain unconscionable
terms.

The assertion that the Plea Agreement "totally benefits
[the government]," Mem. at 44, is contrary to the record. Under
the Plea Agreement, the Petitioner entered a guilty plea to only
one count of the eight-count indictment, sparing him from
exposure to seven additional counts that each carried a
substantial term of incarceration. The Plea Agreement further
provides that the government will not, in this jurisdiction,
prosecute him "for the specific conduct described in the
criminal indictment or statement of facts," Plea Agreement ¶ 10,
and allowed him to obtain a Guidelines reduction for acceptance
of responsibility. Furthermore, the Petitioner cannot overcome
his procedural default. Frady, 456 U.S. at 168.

### GROUND FOURTEEN

The Petitioner argues that his counsel rendered ineffective
assistance because of her "failure to inform [him] to not accept
the government's unconscionable contract due to its nature."
Mem. at 45. A challenger asserting ineffective assistance after

41

a guilty plea must demonstrate deficient performance, and that he would have otherwise proceeded to trial. Strickland, 466 U.S. at 687; Lockhart, 474 U.S. at 59.

The Plea Agreement was not an unconscionable contract.[28] Moreover, the Petitioner himself retained the ultimate authority to determine whether to enter a guilty plea. See United States v. Moussaoui, 591 F.3d 263, 290 (4th Cir. 2010). Accordingly, his counsel did not act unreasonably in not preventing him from accepting it. See Strickland, 466 U.S. at 687. Furthermore, the Petitioner cannot overcome his procedural default. Frady, 456 U.S. at 168.

### IV. MOTION FOR TRANSCRIPTS

The Petitioner has also filed a Motion for Transcripts. ECF No. 46. He states that he attached to the Motion a "motion to proceed in forma pauperis," though no such attachment appears. Id. The court understands the Petitioner's Motion to be a request for court documents at the court's expense.

In the Fourth Circuit, an indigent prisoner is not entitled to transcripts at government expense "merely to comb the record in the hope of discovering some flaw." United States v. Gallo, No. 88-7534, 1988 WL 60934, at *1 (4th Cir. 1988) (citing United States v. Glass, 317 F.2d 200, 202 (4th Cir. 1963)); United States v. Shoaf, 341 F.2d 832, 833-35 (4th Cir. 1964). Although

---

[28] See supra Ground Thirteen.

42

an indigent defendant is constitutionally entitled to a free "transcript of prior proceedings when that transcript is needed for an effective defense or appeal," Britt v. North Carolina, 404 U.S. 226, 227 (1971), there is no constitutional requirement that an indigent collaterally attacking a conviction or sentence be supplied with transcripts at government expense without a showing of a "particularized need" for the documents. See, e.g., United States v. MacCollum, 426 U.S. 317, 323-30 (1976) (federal habeas statute permitting district judge to deny free transcript to indigent prisoner raising frivolous claim in petition for collateral relief does not violate the Constitution); United States v. Hamlett, 128 F. App'x 320, 321 (4th Cir. 2005) ("Copies of transcripts may be provided to an indigent litigant at government expense upon a showing by the litigant of a particularized need for the documents."); Morin v. United States, 522 F.2d 8, 9 (4th Cir. 1975) ("[T]here is no constitutional requirement that [a defendant] be supplied with his attorney's copy of the transcript of his trial. . . . [An inmate is only] entitled to his own copy only upon a showing of particularized need."); Jones v. Superintendent, Va. State Farm, 460 F.2d 150, 152-53 (4th Cir. 1972), aff'd on reh'g, 465 F.2d 1091 (4th Cir. 1972), cert. denied, 410 U.S. 944 (1973) (holding that even if a transcript is already in existence at the time of the request, the government may "constitutionally decline to

43

furnish an indigent with a transcript until a need for it is shown").

The Petitioner has failed to demonstrate any particularized need for the documents he seeks, in particular how they would be relevant to any future action, including this § 2255 Motion. He has already filed a § 2255 Motion, and is therefore not entitled to file another one without court approval. His interest in substantiating his claim that his plea was not voluntary, knowing, and intelligent is merely an attempt to "comb the record in the hope of discovering some flaw." Glass, 317 F.2d at 202.

The Petitioner was present during both proceedings for which he requests transcripts. The court transcripts would add little to any motion that could not be readily supplied by his memory of those proceedings. To grant this request at this juncture would only encourage a "fishing expedition" by the Petitioner at the expense of the government. Accordingly, the Petitioner's Motion is **DENIED**.[29]

### V. MOTION TO EXPAND THE RECORD

The Petitioner requests that the court expand the record to include his affidavit, which he refers to as "Exhibit 5" in his Memorandum. ECF No. 47. The court may direct the parties to

---

[29] If the Petitioner wishes to pay for the cost of the documents, he may contact the Clerk of this court.

expand the record, if the § 2255 motion is not dismissed. Rules Governing § 2255 Proceedings 7(a). For the reasons set forth in this Order, the Petitioner's § 2255 Motion is denied. Accordingly, the Petitioner's Motion to Expand the Record is **DENIED**.

## VI. CONCLUSION

The Petitioner's Motion to Vacate, Set Aside, or Correct Sentence; Motion for Transcripts; and Motion to Expand the Record are **DENIED**.[30] The Petitioner is **ADVISED** that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal, within sixty (60) days of the entry of this Opinion and Final Order, to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia 23510. For the reasons stated herein, the court declines to issue a certificate of appealability.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Final Order to the Petitioner, to the Federal Public Defender at Norfolk, and to the United States Attorney at Norfolk.

---

[30] The § 2255 Motion, files, and records of the case conclusively show that the Petitioner is entitled to no relief. Accordingly, the court will not hold an evidentiary hearing. See 28 U.S.C. § 2255; United States v. Baysden, 326 F.2d 629, 631 (4th Cir. 1964).

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge

_____
REBECCA BEACH SMITH
CHIEF JUDGE

January 13 , 2017